IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| WAYNE EDWARD STEVENSON | ) | |
| | ) | |
| v. | ) | No. 1:09-0024 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 16), to which defendant has responded with its own motion for judgment on the administrative record (Docket Entry No. 18). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, that defendant's motion for judgment be GRANTED, and that the decision of the SSA be AFFIRMED.

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

1

# I. Introduction

Plaintiff filed his DIB and SSI applications on December 1, 2006, alleging that he became disabled on September 1, 2006 due to nerves, heart trouble, and strokes. (Tr. 25-26, 59) Plaintiff's applications were denied at both the initial and reconsideration levels of review by the state Disability Determination Section ("DDS"). (Tr. 25-26) Plaintiff thereafter requested a de novo hearing before an Administrative Law Judge ("ALJ"). That hearing was held on October 24, 2007. (Tr. 510-39) Plaintiff was represented by counsel at the hearing, and testimony was received from plaintiff and an impartial vocational expert. Following the hearing, the ALJ closed the record and took the case under advisement.

On November 7, 2007, the ALJ issued a written decision in which he found plaintiff not disabled. (Tr. 13-24) The decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date of disability (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease, depressive disorder, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to lift and/or carry 20 to 25 pounds occasionally; stand and/or walk for a total of about 6 hours in an 8 hour workday; sit for a total of about 6 hours in an 8 hour workday; unlimited ability to push and/or pull with the upper and lower extremities; occasional

climbing; frequently balance, stoop, kneel, crouch, crawl; unlimited ability to reach, handle, finger, feel; limited to no job requiring good far visual acuity; no jobs requiring good hearing with deafness in right ear but able to hear well with left ear; limited exposure to marked changes in temperature and humidity. The claimant is able to understand and remember simple and low level detailed tasks with normal supervision and with social interaction and adaptation adequate for those tasks. These findings are consistent with the assessments of the examining sources, Dr. Rinehart and Dr. Doineau at Exhibits 9F and 10F, and the assessments by the State agency consultants, Dr. Cohn and Dr. Regan at Exhibits 11F, 16F, and 17F. The lifting and carrying limitations found by Dr. Rinehart, examining physician, are accepted over those found by nonexamining State agency consultants. However, the other limitations as found by the State agency consultants are accepted as they are consistent with the medical evidence of record.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Born on November 16, 1955, the claimant was 50 years old on September 1, 2006, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15, 17, 22-24)

On February 18, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-9), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. <u>Id.</u>

## II. Review of the Record

The following review of the medical and testimonial evidence is drawn in large measure from the summaries contained in plaintiff's brief (Docket Entry No. 17 at 3-6) and the ALJ's decision (Tr. 18-20).

Plaintiff was hospitalized from April 8, 2003, to April 11, 2003, for evaluation of chest pain which was diagnosed as non-ST elevation myocardial infarction. Catheterization and arteriography showed occluded left circumflex and right coronary arteries, with 30-40 percent diffuse disease of the left anterior descending artery and 20-30 percent stenosis of the obtuse marginal artery. Ejection fraction was 55 percent. Plaintiff was not a candidate for surgery, but was treated medically and placed on temporary driving and lifting restrictions. (Tr. 113-14)

Plaintiff was able to return to work in August 2003, with a restriction against lifting over 25 pounds. (Tr. 208, 213) Plaintiff was encouraged to stop smoking, and to continue his exercise program. (Tr. 259) In February 2004, Cardiolite stress test showed ejection fraction of 36 percent and no ischemia. (Tr. 257) In followup with his heart doctors through May 2006, plaintiff was noted to be doing very well from a cardiac standpoint,

4

despite having mild chronic shortness of breath. Physical examination was normal, and further stress testing was not indicated due to plaintiff's lack of cardiac symptoms. (Tr. 256)

In June 2004, plaintiff sought treatment for right earache, and was given a referral to Dr. Ronald Cate, an otolaryngologist. (Tr. 117) Records from Dr. Cate dated December 2004 to April 2006 show treatment for sinus headaches and chronic sinusitis. (Tr. 145-60) Plaintiff also appears to have had a surgical procedure on his right external ear canal in the fall of 2004. (Tr. 137) An audiogram in July 2005 revealed right ear profound mixed hearing loss and left ear moderate rising to mild and sloping to profound mixed hearing loss. (Tr. 150) The narcotic drug Lortab was prescribed for sinus headache and ear pain, though plaintiff was directed at his April 2006 appointment with Dr. Cate to use the Lortab sparingly. (Tr. 145)

On referral from Dr. Cate, plaintiff saw Dr. Mary Ellen Clinton, a neurologist, for evaluation of her headaches in March 2005. After ordering and reviewing a head MRI (Tr. 143), Dr. Clinton noted hypertensive white matter changes, and assessed plaintiff's chronic daily headaches as suspected muscle contraction headaches likely contributed to by his chronic anxiety disorder. (Tr. 135) Dr. Clinton recommended that a sleep study be performed because of sleep fragmentation reported since plaintiff's heart attack and his ear operation, but plaintiff declined for fear of the procedure. Id. Dr. Clinton also noted the presence of a fine postural tremor. She treated plaintiff's headaches with medications, and his symptoms were reported to have been much improved until July 7, 2005, when he requested a prescription for hydrocodone. (Tr. 125) Dr. Clinton declined to prescribe the narcotic, based on her suspicion that plaintiff had misused it in treatment of his anxiety symptoms when it had last been prescribed for him some 7-8 months earlier. Id. Because of

5

the worsening of these anxiety symptoms, Dr. Clinton directed plaintiff to follow up with mental health care as soon as possible, and prescribed additional medications in the interim. Id. These anxiety medications were helpful to plaintiff, and on July 19, 2005, Dr. Clinton released him from care with a refilled prescription for these medications and a referral to mental health care for continued medical therapy and counseling. (Tr. 120)

Plaintiff reported for treatment at Centerstone Community Mental Health Center on August 24, 2005, when he was seen by Dr. John Koomen. Dr. Koomen was plaintiff's treating psychiatrist from August 2005 until July 2007, and directed plaintiff's medication regimen; plaintiff did not receive treatment in the form of counseling. Dr. Koomen diagnosed anxiety disorder and depressive disorder (e.g., Tr. 368), and also noted plaintiff's report of transient muscle twitches in the forearms and legs that did not interfere with his activities (Tr. 346).

On September 4, 2006, plaintiff was seen in a hospital emergency room with complaints of slurred speech, sweating, and being hard to arouse. (Tr. 269) Accidental overdose of medication was diagnosed, and plaintiff was discharged home with instructions to watch his medication intake carefully. (Tr. 272, 278)

A consultative examination was performed by Dr. Darrel Rinehart, M.D., on February 12, 2007. Plaintiff reported feeling extremely nervous all of the time. He also reported that he had three heart attacks in the past with the most recent one in April 2003, with no bypass surgery or stent placement. Plaintiff denied current chest pain but said that he became weak and dizzy whenever he went outside in the sunshine. Plaintiff also gave a history of several small strokes and one large stroke that affected his memory. Sinus congestion and hypertension were doing well. Plaintiff continued to smoke 3-4 cigarettes a

6

day.  Vision was 20/70 in the right eye and 20/200 in the left eye.  Range of motion in all joints was normal.  Plaintiff was able to heel walk, toe walk, heel to toe walk, bend over and touch his toes, and squat and arise.  There was good strength in all muscle groups.  Review of systems was essentially negative and heart/lungs were within normal limits.  Dr. Rinehart stated that plaintiff should be able to sit, stand, lift, and walk up to 6 hours in an 8-hour workday, and lift 20-25 pounds moderately over the same period of time.  (Tr. 279-81)

A consultative psychological evaluation was performed by Deborah Doineau, Ed.D., on February 18, 2007, with diagnoses of generalized anxiety disorder, adjustment disorder with depressed mood, prior history of alcohol dependence (up to 1 case per day all his life until April 2003), possible somatization tendencies, and possible hypochondriac tendencies.  Plaintiff reported that he no longer had a driver's license due to residual shaking since a stroke in 2005.  Medications were helpful in reducing his symptoms and as long as he took his medications he was steady.  Plaintiff was reported to have mild hearing problems with no hearing aids.  He ambulated without assistance and had a normal gait.  Plaintiff reported smoking 5-6 cigarettes a day, down from 3 packs a day.  Daily activities included washing dishes, vacuuming, straightening up, and watching television.  Plaintiff read his mail, kept up with appointments, shopped for himself, and made his own decisions.  He socialized quite a bit.  There were mild limitations assessed in understanding and remembering and in sustaining concentration and persistence.  There were no limitations assessed in social interaction and adaptability.  (Tr. 282-88)

Dr. Koomen completed a mental residual functional capacity assessment dated September 27, 2007, which appears to be strictly based on plaintiff's responses to interview questions that tracked the domains on the assessment form.  (Tr. 469-71)  The assessment

reflects no evidence of limitation in the ability to remember locations and work-like procedures. There were no significant limitations in the ability to understand, remember, and carry out very short and simple instructions; perform activities within a schedule and maintain regular attendance; sustain an ordinary routine without special supervision; or interact with the public, supervisors, and coworkers. There was a moderate limitation in the ability to understand, remember, and carry out detailed instructions, and to respond appropriately to changes in the work setting. There was a marked limitation in the ability to maintain attention, concentration, and persistence for extended periods, and plaintiff was easily distracted. Id.

Records from Lawrenceburg County Health Department dated July 2006 to July 2007 show treatment for hypertension, coronary artery disease, problems urinating, and gastroesophageal reflux disease. Plaintiff reported occasional angina. Plaintiff smoked a pack of cigarettes a day. Prostate exam was normal. There were no signs of congestive heart failure. Hydrocodone was prescribed for pain. (Tr. 377-85, 450-54)

Additional records from Dr. Cate dated September 21, 2007, and October 19, 2007, show treatment for chronic left sinusitis with associated pain. Lortab was prescribed as well as an antibiotic. Plaintiff also reported that his nerves were bad and that he shakes all the time. (Tr. 473-74)

At the ALJ hearing on October 27, 2007, plaintiff testified that his main problems were bad nerves and the many medications he had to take. He testified that he started shaking after his most recent heart attack and stroke. He reported having three heart attacks but no surgeries. He stated that his heart problems have left him so weak he can hardly walk. He stated that the stroke caused poor short term memory. He reported being

8

deaf in the right ear, but had good hearing in the left ear. He further testified that his balance was poor and he fell often, that his medication made him dizzy, and that he had daily sinus headaches. (Tr. 522-31)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not

10

direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff alleges error in the ALJ's decision to give more weight to the opinion of the consultative psychological examiner, Dr. Doineau, than to the opinion of the treating psychiatrist, Dr. Koomen. In addition, plaintiff argues that the ALJ failed to consider all of his impairments in determining that he did not meet or equal the criteria of any listed impairment. He also argues that the ALJ erred in discounting the credibility of his allegations. He further argues that the ALJ erred in failing appropriately to consider, or to question the vocational expert about, the effect of plaintiff's limitations from the number and types of medications he takes, particularly as they relate to his ability to travel to and from the jobs the expert identified. As further explained below, the undersigned finds no merit in these arguments.

With regard to the ALJ's alleged failure to consider all of plaintiff's

impairments in combination when considering, at step three of the sequential evaluation process, whether a listed impairment or its equivalent was present, this bare allegation is not supported by any argument as to how plaintiff's particular combination of impairments could be deemed to either implicate a listed impairment that was not considered, or to meet or equal the criteria of impairments listed at sections 12.04 and 12.06, 20 C.F.R. Part 404, Subpart P, Appendix No. 1, which the ALJ explicitly considered. (Tr. 15-16) Considering this failure to make any showing of reversible error, as well as the ALJ's explicit statement that plaintiff's impairments were "considered singly and in combination" (Tr. 15), the undersigned finds no merit in this contention.

As to the opinion of Dr. Koomen, such a treating source opinion, if well supported by objective, clinical evidence and not substantially opposed on the record, is entitled to controlling weight pursuant to 20 C.F.R. § 404.1527(d)(2). However, even where such an opinion is not entitled to controlling weight, the Sixth Circuit has noted that "in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference...." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 242 (6th Cir. 2007). Accordingly, whenever the weight of a treating source opinion is discounted, claimants are assured that they will be provided with "good reasons" for the weight given their doctor's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The regulatory requirement of good reason-giving has been described by the Sixth Circuit as an "important procedural safeguard" which the agency cannot disregard in an *ad hoc* fashion. Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 747 (6th Cir. 2007)(quoting Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)).

Specifically with regard to Dr. Koomen's September 27, 2007 assessment, the ALJ did not give significant weight to the opinions expressed therein, noting that "[t]his assessment is apparently based on claimant's self-report of symptoms and the narrative reports from the mental health facility do not support this degree of limitation[, n]or is this conclusion supported by or consistent with the record as a whole." (Tr. 21) The ALJ had earlier noted that plaintiff's anxiety and depression were treated by Dr. Koomen with medication only, and that those symptoms improved with medical therapy, without requiring counseling. Id. Plaintiff also reported to Dr. Doineau, the consultative examiner, that his medications were helpful in reducing his psychological symtpoms, and she assessed only mild limitations accordingly. (Tr. 283, 286) Based on this evidence and explanation, the undersigned finds no error in the decision to assign insignificant weight to Dr. Koomen's assessment. In particular, the September 2007 assessment is unimpressive as anything more than an endorsement of plaintiff's own reporting of his symptoms, and as such, is not subject to the protections of the treating physician rule. See Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007); Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 877 (6th Cir. 1990). More tellingly, as noted by the ALJ, Dr. Koomen's treatment notes reflect plaintiff's general satisfaction with his treatment and the results thereof. Accordingly, the undersigned finds no error in the ALJ's weighing of the opinion of Dr. Koomen, versus that of Dr. Doineau.

Plaintiff further argues that the ALJ's analysis of the credibility of his subjective complaints is insufficient. Under the regulations, 20 C.F.R. §§ 404.1529(c), 416.929(c), the ALJ, upon finding "a medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," is required to then evaluate the intensity and persistence of the symptoms by reference to the record as a whole,

13

including both the objective medical evidence and other evidence bearing on the severity of the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3).  There is no question that a claimant's subjective complaints can support a finding of disability -- irrespective of the credibility of that claimant's statements -- if they are grounded in an objectively established, underlying medical condition and are borne out by the medical and other evidence of record.  Id.; see, e.g., Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); Social Security Ruling 96-7p, 1996 WL 362209, 61 Fed. Reg. 34483, at *34484-34485 (describing the scope of the analysis as including "the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists or other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record"; "[A] finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled.").  Such "other evidence" which the ALJ is bound to consider includes evidence of the following factors:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use of have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

>    (vii) Other factors concerning your functional limitations and
> restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

It is well established that an ALJ may properly consider the credibility of a claimant in conjunction with his consideration of the medical and other evidence described above, and that this credibility finding is due great weight and deference in light of the ALJ's opportunity to observe the claimant's demeanor while testifying. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). In considering the ALJ's finding on the weight of plaintiff's subjective complaints, this court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." Id. Here, the ALJ properly reviewed the medical and nonmedical evidence of record according to the preceding regulations, resulting in the following determination:

> There was routine healthcare management from treating sources with refills of medication. Examinations were essentially negative. Ejection fraction was 66 percent with no evidence of ischemia. There is no basis for a definitive diagnosis of a stroke. Hearing, vision, and pulmonary reserve are adequate for most activities. Headaches and sinus problems, as well as depression and anxiety, are responsive to medications. The claimant performs routine activities of daily living independently including the ability to ambulate effectively and make his own decisions. The claimant's medically determinable impairments, either singly or in combination, including pain, are not supported by clinical and laboratory diagnostic techniques that could reasonably be expected to produce the claimant's symptoms to the extent alleged.

(Tr. 22) Plaintiff does not take issue with the propositions advanced above, but merely objects to the ALJ's reliance, in part, on his level of daily functioning. Citing Rogers v.

Comm'r of Soc. Sec., 486 F.3d at 248-49. However, the undersigned finds that the determination above not only comports with Rogers (which denounced the equation of the ability to perform minimal activities of daily functioning with the ability to work full time, when the scope of those daily activities was overstated by the ALJ, who also failed to recognize the reported physical consequences of undertaking such activities) but is both sufficiently explained and substantially supported by the evidence in this case.

      As to the alleged effect of plaintiff's multiple medications on his ability to travel to the workplace or otherwise perform the jobs identified by the vocational expert, the ALJ specifically addressed plaintiff's complaints of dizziness as a side effect, finding that "the record does not show that there are any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 continuous months." (Tr. 21) In the absence of significant medical evidence of medication side effects, plaintiff's general contention that the vocational expert "should have taken into account the claimant's medications which he was taking and whether or not he could perform the jobs he stated in the national economy while taking this amount of medication daily" (Docket Entry No. 17 at 10) is merely a plea for acknowledgment that prospective employers might be leery of hiring or retaining someone who is dependent on so much medication, as was apparently plaintiff's experience in the past. (Tr. 284, 538) Unfortunately, this practical consideration is irrelevant to the step five determination of the existence of a significant number of other jobs in the economy that plaintiff could perform. Rather, plaintiff's ability to perform other work is determined by reference to plaintiff's work-related limitations of function arising from his combination of medically determinable impairments and their treatment, in addition to his vocational qualifications. Neither the hiring practices of prospective employers, nor the fact

that plaintiff would not actually be hired to do work he could otherwise do simply because he uses a number of strong medications, are factors in the analysis. 20 C.F.R. §§ 404.1566, 416.966.

Moreover, while plaintiff argues that the vocational expert should have addressed the isolated nature of the jobs identified, this argument fails to account for the fact that the expert identified thousands of regional jobs, i.e., jobs within the state of Tennessee. The "isolated jobs" which the regulations exclude from the calculus of "work which exists in the *national* economy" are those "that exist only in very limited numbers in relatively few locations *outside of the region where you live*...." 20 C.F.R. §§ 404.1566(b); 416.966(b) (emphasis added). Indeed, lack of work in a claimant's local area is identified among the factors which expressly do **not** influence the disability determination. 20 C.F.R. §§ 404.1566(c)(2), 416.966(c)(2). In any event, with the expert identifying more than a million jobs in the national economy, with no indication that those jobs are concentrated in only a few remote areas, there can be no doubt that the government has carried its burden of identifying a significant number of other jobs. See Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999). Finally, plaintiff's fear of continuing to drive as a consequence of his heart attack in 2003 (Tr. 526) or his alleged stroke in 2005 (Tr. 282) does not equate with an impairment-produced inability to travel by any available means, such that the ALJ would be required to specifically direct the vocational expert's consideration of this factor. See id. at 292-93. As defendant points out, plaintiff was able to travel to and from work until September 1, 2006, the day he stopped working. (Tr. 59)

In sum, the undersigned finds the decision of the ALJ to be supported by

17

substantial evidence and deserving of affirmance.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, that defendant's motion for judgment on the administrative record be GRANTED, and that the SSA's decision in this matter be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 13th day of April, 2010.

                                                 s/ John S. Bryant
                                                 JOHN S. BRYANT
                                                 UNITED STATES MAGISTRATE JUDGE