# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| WAYNE EDWARD STEVENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:09-0024 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Bryant |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Pending before the Court is Plaintiff Wayne Edward Stevenson's ("Plaintiff") Motion for Judgment on the Record ("Plaintiff's Motion") (Doc. No. 16) with supporting Memorandum (Doc. No. 17). The Defendant filed a competing Motion for Judgment on the Record (Doc. No. 18) with supporting Memorandum (Doc. No. 19). Magistrate Judge Bryant issued a Report and Recommendation ("Report") that Plaintiff's motion be denied and that the decision of the Administrative Law Judge ("ALJ") be affirmed (Doc. No. 20). Plaintiff filed an Objection to the Report (Doc. No. 22), and Defendant filed a Response (Doc. No. 24). Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

I. BACKGROUND

    *A.   Procedural Background*

Plaintiff filed the current application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 1, 2006, alleging disability onset as of

1

September 1, 2006. (Tr. 25-26.) Plaintiff alleged disability as the result of nerves, heart troubles, and strokes. (Tr. 59.) Following denial at both the initial and reconsideration phases (Tr. 13, 25-26), Plaintiff requested and received a *de novo* hearing before an ALJ. A hearing was held on October 24, 2007, and Plaintiff appeared with counsel and provided testimony. (Tr. 510-539.) On November 7, 2007, the ALJ issued a written decision in which he concluded that Plaintiff was not entitled to DIB or SSI benefits. (Tr. 11-24.) The ALJ reported the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date of disability (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease, depressive disorder, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to lift and/or carry 20 to 25 pounds occasionally; stand and/or walk for a total of about 6 hours in an 8 hour workday; sit for a total of about 6 hours in an 8 hour workday; unlimited ability to push and/or pull with the upper and lower extremities; occasional climbing; frequently balance, stoop, kneel, crouch, crawl; unlimited ability to reach, handle, finger, feel; limited to no job requiring good far visual acuity; no jobs requiring good hearing with deafness in right ear but able to hear well with left ear; limited exposure to marked changes in temperature and humidity. The claimant is able to understand and remember simple and low level detailed tasks with normal supervision and with social interaction and adaptation adequate for those tasks. These findings are consistent with the assessments of the examining sources, Dr. Rinehart and Dr. Doineau at Exhibits 9F and 10F, and the assessments by the State agency consultants, Dr. Cohn and Dr. Regan at Exhibits 11F, 16F, and 17F. The lifting and carrying limitations found by Dr. Rinehart, examining physician, are accepted over those found by nonexamining State agency consultants. However, the other limitations as found by the State agency consultants are accepted as they are consistent with the medical evidence of record.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Born on November 16, 1955, the claimant was 50 years old on September 1, 2006, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15, 17, 22-24.)

On February 18, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 5-8), thus rendering the ALJ's decision the final decision of the Social Security Administration. This civil action was thereafter timely filed, and this Court has jurisdiction. 42 U.S.C. §405(g) (2008). On April 13, 2010, Magistrate Judge Bryant recommended the ALJ's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 20.) Plaintiff objected to the magistrate judge's findings. (Doc. No. 22.) Specifically, Plaintiff contends that the ALJ erred in assigning insignificant weight to a medical opinion by Plaintiff's treating psychiatrist and assigning significant weight to the medical opinion of a consulting psychologist. (*Id.*) The Court discusses the merits of the Plaintiff's objections below.

B. *Factual Background*

The Court adopts the facts as summarized by the Report. (Doc. No. 20.)

## II. STANDARD OF REVIEW

This Court's review of the Report is *de novo*. 28 U.S.C. § 636(b) (2008). However, this review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he finding of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2008). Accordingly, if the Commissioner adopts the ALJ's decision, the reviewing court will uphold the decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "such evidence as a reasonable mind would accept as adequate to support the conclusion." *Richardson v. Pereles*, 402 U.S. 389, 401 (1979). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r*, 203 F.3d 388, 389 (6th Cir. 1999); *Crum v. Sullivan*, 921 F.2d 642, 644 (1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to a different

factual conclusion as to the Plaintiff's claim on the merits than that of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

 *A. Plaintiff objects to the ALJ's assignment of significant weight to the opinion of a consulting psychological examiner and insignificant weight to the opinion of Plaintiff's treating psychiatrist.*

Plaintiff's sole contention is that the ALJ gave inappropriate weight to the opinion of Plaintiff's treating psychiatrist, Dr. John Koomen, regarding Plaintiff's mental residual functional capacity ("MRFC"). (Tr. 468-71, 506-09.) Specifically, Plaintiff argues that the ALJ erred by assigning insignificant weight to the opinion of Dr. Koomen and instead giving significant weight to the opinion of a consulting psychologist, Dr. Doineau.

Mental residual functional capacity is an assessment of a claimant's work-related mental limitations, and is one component of a claimant's overall residual functional capacity ("RFC").[1] 20 C.F.R. § 404.1545, 416.945. A claimant's RFC is utilized during the five-step disability determination process to evaluate whether or not a claimant can perform either past relevant work (step four) or any other work in the national economy (step five). 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4) (2006). At the administrative hearing stage, the ultimate determination of a claimant's RFC rests with the ALJ. 20 C.F.R. § 404.1546, 416.946 (2006). However, the ALJ is required to determine a claimant's RFC by evaluating "all of the relevant medical and other evidence" in a claimant's record, including "statements about what you can

---

[1] "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a), 416.945(a).

5

still do that have been provided by medical sources, whether or not they are based on formal medical examinations." 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3) (2006).

Here, the ALJ weighed three different medical opinions regarding Plaintiff's MRFC to determine Plaintiff's overall RFC.[2] Each opinion evaluated the degree of Plaintiff's mental limitation in four work-related cognitive dimensions: Understanding and Memory, Sustained Concentration and Persistence, Social Interaction, and Adaptation. *See* 20 C.F.R. § 404.1545(c), 416.945(c) (2006).

Dr. Doineau, a consulting psychologist, conducted a psychological evaluation of Plaintiff on February 18, 2007 at the request of the Disability Determination Section. (Tr. 282-87.) Her evaluation was based on information "either provided by the claimant or gleaned from observation and interview." (Tr. 283.) After evaluating Plaintiff's mental status, symptomatology, and activities of daily living, Dr. Doineau assessed Plaintiff as possessing either no limitations or mild limitations in all four MRFC categories.[3] (Tr. 286.)

On May 7, 2007, Dr. William Regan, a state medical consultant, completed a MRFC evaluation of Plaintiff. (Tr. 392-94.) Dr. Regan's evaluation contained a total of twenty activities, clustered into the aforementioned four work-related dimensions. For each activity, Dr.

---

[2] The record also contains a consultant's review of Dr. Regan's May 2007 MRFC evaluation, performed by Dr. Richard Gann. (Tr. 414-15.) Although the initial page of this review indicates that Dr. Gann could not evaluate Dr. Regan's MRFC evaluation because the narrative was "incomplete or inadequate" in all four socio-psychological categories, Dr. Gann's subsequent narrative discussion of Plaintiff's limitations comports almost precisely with Dr. Regan's conclusions. (Tr. 392-94.) Both Dr. Regan's assessment and Dr. Gann's subsequent review appear to have been accepted as valid by the ALJ. (Tr. 22.)

[3] "Understanding and remembering: Mildly limited. Sustained concentration and persistence: Mildly limited. Social interaction: Not limited. Adaptability: Not Limited." Unlike the subsequent evaluations, Dr. Doineau provided only a single score for each dimension, rather than responses to multiple activities within each dimension. (Tr. 286.)

6

Regan indicated the degree of limitation that Plaintiff possessed.[4] (*Id.*) The basis for Dr. Regan's evaluation was "the evidence on file," not a face-to-face interview. (Tr. 392.) Dr. Regan assessed Plaintiff as possessing mild to moderate limitations in each of the four MRFC dimensions.[5] (*Id.*)

On September 27, 2007, Dr. John Koomen, Plaintiff's treating psychiatrist,[6] completed a MRFC evaluation of Plaintiff.[7] Dr. Koomen's assessment contained activities and response categories that were identical to those used by Dr. Regan in his May 2007 evaluation.[8] For many of the activities, it appears that Dr. Koomen hand-wrote Plaintiff's own response regarding his limitation in the space beneath the boxes for rating Plaintiff's limitation in that activity. (Tr.

---

[4] The responses available for each question were: "Not Significantly Limited," "Moderately Limited," "Markedly Limited," "No Evidence of Limitation in this Category," and "Not Ratable on Available Evidence." (Tr. 392.) The Court assumes that the "Not Significantly Limited" response is roughly equivalent to the "Mildly Limited" response that Dr. Doineau used on her evaluation, and the phrases will be used interchangeably throughout.

[5] Understanding and Memory (3 activities): Mild (2), Moderate (1). Sustained Concentration and Persistence (8 activities): Mild (5), Moderate (3). Social Interaction (5 activities): Mild (4), Moderate (1). Adaptability (4 activities): Mild (3), Moderate (1).

[6] Plaintiff had seen Dr. Koomen for medication management at Centerstone Community Mental Health Center approximately 18 times over the two year period prior to the evaluation. (Doc. No. 22.)

[7] The record also contains a medical source statement by Dr. Koomen completed on January 31, 2008. (Tr. 507-09.) This source statement also provides information regarding Plaintiff's work-related limitations, though it does not utilize the same form as the September 2007 evaluation. This evaluation was submitted by Plaintiff after the ALJ hearing, while his request to the Appeals Council was pending, and so was not considered by the ALJ in his written determination of Plaintiff's case.

[8] The ALJ expressed some hesitation during the hearing about the form Dr. Koomen used for his September 2007 evaluation (Tr. 535-36), though the ALJ did ultimately accept the evaluation into evidence. The ALJ did not express any further concern about the form Dr. Koomen used for his evaluation in his subsequent written determination of Plaintiff's disability claim. (Tr. 11-24.)

7

469-71.) Dr. Koomen assessed Plaintiff's limitations as mild to marked, with the most severe limitations arising in Sustained Concentration and Persistence.[9]

During the hearing, the ALJ questioned a vocational expert regarding the impact of two different MRFC's on the ability of a hypothetical candidate to obtain work in the national economy.[10] In the first hypothetical, based on the mental limitations determined by Dr. Doineau and Dr. Regan, the vocational expert testified that an individual with such limitations would be able to perform basic, unskilled jobs that are numerous in both the state and national economy. (Tr. 532-35.) In the second hypothetical, based on the mental limitations determined by Dr. Koomen, the vocational expert testified that a chronic profile of such limitations would "preclude work." (Tr. 537.) Thus, the determination of Plaintiff's ability to work was likely to hinge on the relative weight afforded to the competing assessment of Plaintiff's MRFC.

When a claimant's file contains statements or opinions from multiple medical sources, the treating physician rule requires the ALJ to afford the opinion of a treating physician substantial deference. *E.g., Howard v. Comm'r*, 276 F.3d 235, 240 (6th Cir. 2002) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). However, this deference is not absolute; the Secretary may give less weight to the opinions of treating physicians that are not "supported by sufficient clinical findings [or] are inconsistent with the evidence." *Otis v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam)); *see* 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2); *see also Harris*, 756 F.2d at 435

---

[9] Understanding and Memory (3 activities): No Limitation (1), Mild (1), Moderate (1) . Sustained Concentration and Persistence (8 activities): Mild (3), Moderate (1), Marked (3), Not Ratable (1). Social Interaction (5 activities): Mild (5). Adaptability (4 activities): Mild (1), Moderate (3).

[10] The physical limitations assumed by the vocational expert were identical across both hypothetical situations, and are consistent with the ALJ's ultimate determination of Plaintiff's physical abilities. (Tr. 17-22.) The Plaintiff has not objected to the ALJ's finding regarding his physical functional capacity. (Doc. No. 22.)

8

("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference .... This is true, however, only if the treating physician's opinion is based on sufficient medical data."); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984) ("The Secretary is not bound by a broad conclusory statement of a treating physician in making his determination.").

If the Secretary determines that the opinion of a treating physician does not deserve controlling weight, certain factors are utilized to determine the appropriate weight to give the opinion.[11] 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6) (2006). Further, the Secretary must provide "good reasons" for the weight ultimately assigned to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2), 416.927(d)(2). This procedural good reason requirement serves several important purposes, including assisting the claimant in understanding the outcome of their case, ensuring that the ALJ abides by the treating physician rule, and allowing for appropriate review of an ALJ's decision. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004); *see also Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988) ("[T]he ALJ . . . may reject determinations of such a physician when good reasons are identified for not accepting them.").

In his written decision, the ALJ provided the following statement regarding his functional assessment of Plaintiff:

> Although the claimant has some limitations with regard to social and occupational functioning, the record as a whole demonstrates that the claimant is able to perform these functions in a satisfactory manner. The mental health facility provided medication management for claimant's complaints of anxiety and depression. It was noted that symptoms were improved with medication. No

---

[11] These factors are: length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability of the opinion; consistency with the record as a whole; specialization of the opinion source; and other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

counseling was provided. Therefore, it is concluded that the claimant has the cognitive ability to understand and perform simple routine instructions and tasks.

(Tr. 21.)

In arriving at this determination, the ALJ gave significant weight to the assessment by Dr. Doineau, stating that it was a "comprehensive evaluation[] of claimant's . . . mental impairments and consistent with the record as a whole." (Tr. 22.) The ALJ also stated that "[n]othing significant has been added to the record by way of new impairments or worsening existing ones to support a decline in functioning." (*Id.*) The ALJ only briefly mentioned Dr. Regan's MRFC, but did state that the assessment was "accepted as valid" without providing additional explanatory reasoning. (*Id.*) Conversely, the ALJ stated that the September 2007 MRFC assessment by Dr. Koomen, Plaintiff's treating psychiatrist, was "not given significant weight." (Tr. 21.) The ALJ gave three reasons for his weighting of Dr. Koomen's September 2007 assessment: (1) "the narrative reports from the mental health facility do not support this degree of limitation" (Tr. 21); (2) "[t]he assessment is apparently based on claimant's self-report of symptoms" (*Id.*); and (3) that the assessment's conclusions were not "supported by or consistent with the evidence as a whole." (*Id.*)

The Court finds that the ALJ did not err in assigning insignificant weight to the September 2007 opinion of Dr. Koomen. Specifically, the ALJ provided good reasons supported by substantial evidence for giving diminished weight to the opinion of Dr. Koomen, a treating physician. Each of the ALJ's reasons will be addressed in turn.

*Unsupported by Narrative Reports.* The ALJ concluded that the narrative reports from Plaintiff's treatment at Centerstone Community Mental Health Center ("Centerstone") did not support the degree of limitation in Dr. Koomen's September 2007 assessment. (Tr. 21.) Plaintiff met with Dr. Koomen at Centerstone from August 2005 until July 2007 for "medication

10

maintenance." (Tr. 312-76, 430-49.) Notes from twelve of these visits appear in the record. (*Id.*) Dr. Koomen completed brief narrative remarks for each visit, which generally noted that Plaintiff was satisfied with his medications and occasionally documented other issues such as Plaintiff's reported symptoms, Plaintiff's relationship with his wife and concern about her health, health insurance, and eligibility for disability benefits. (*Id.*) Although these print-outs contain sections for the evaluation of a variety of mental status components (such as mood, thought process, insight, judgment, memory and concentration), Dr. Koomen did not complete these portions for any of his medication maintenance visits with Plaintiff. (*Id.*)

The ALJ remarked that the Centerstone records "noted that symptoms were improved with medication." (Tr. 21.) The ALJ also noted that "the record does not show that there are any side effects from prescribed medication that caused significant limitations of function that lasted for a period of 12 continuous months. Rather, the evidence demonstrates that the claimant received a good result from medications when taken as prescribed on a consistent basis." (*Id.*) This Court finds that the records from Centerstone provide substantial evidence to support the ALJ's conclusions.

A medical opinion may be afforded diminished weight, or even rejected, if it is unsupported by medical records and treatment notes. *See Rabbers v. Comm'r Soc Sec.*, 582 F.3d 647, 661 (6th Cir. 2009) (upholding an ALJ's rejection of a treating physician's opinion that was "not supported by the medical records or treatment notes"); *see also Chesterfield v. Sec'y of Health & Human Servs.*, 816 F.2d 678 (6th Cir. 1987) (holding that an ALJ properly found claimant was not disabled when physician records indicated that claimant's alleged narcolepsy was "adequately controlled by medication"). This is especially true if the treatment notes arise from the same physician who offers the later, unsupported assessment. *Cf. Hall v. Bowen*, 837

11

F.3d 272, 276 (1988) (upholding ALJ's rejection of a treating physician's evaluation due to inconsistency with the physician's earlier opinion and the absence of new clinical findings to support the decline in function). The most common notation that Dr. Koomen provided was that Plaintiff was "satisfied" with his medications, a remark included in the narrative notes for ten of the Plaintiff's twelve visits.[12] These notations are consistent with other reports in the record of Plaintiff's generally positive response to medication for his mental health issues. (Tr. 120, 125, 131, 283.) Plaintiff did occasionally report some side-effects or residual symptoms, such as "transient muscle twitches," but Dr. Koomen noted that such symptoms did not interfere with Plaintiff's activities. (Tr. 346.) In the final medication maintenance meeting from Centerstone, dated July 5, 2007, Plaintiff reported short-term memory problems. (Tr. 430.) However, Plaintiff decided "not to stop or reduce" any of his medication as a result of this issue. (*Id.*) A reasonable mind could conclude that the Centerstone treatment records, containing frequent notations of satisfaction with Plaintiff's mental health treatment and the absence of any documented debilitating side effects, are inconsistent with the marked psychological limitations assessed in Dr. Koomen's September 2007 evaluation.

Although the Court may have reached a different conclusion upon weighing these treatment records *de novo*, the standard of review here requires deference to any determination of the ALJ supported by substantial evidence. Therefore, since the ALJ's finding that Dr. Koomen's assessment is unsupported by the narrative reports from Centerstone is based on substantial, the Court must defer to this conclusion.

---

[12] On the visit dated 10/12/2005, Dr. Koomen noted instead that Plaintiff was "pleased" with his medications. (Tr. 356.)

*Based on Claimant Self-Report.* The ALJ also justified assigning insignificant weight to Dr. Koomen's September 2007 assessment because this evaluation was "apparently based on claimant's self-report of symptoms." (Tr. 21.) The Court finds that although the mere use of self-report as the basis for a medical source statement is not a good reason to reject that statement, the ALJ did have a good reason for rejecting Dr. Koomen's assessment here because Plaintiff's self-reports were appropriately deemed incredible.

Medical source statements based on the self-report of symptoms are not prohibited during the assessment of a claimant's RFC; in fact, the ALJ is allowed to consider *any* statement provided by a medical source. 20 C.F.R. § 404.1545(a)(3), 416.945(a)(3) ("We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations."). Thus, the mere fact that a medical source statement was based on self-report is not sufficient reason to discount the assessment when determining a claimant's RFC. Further, the assessment by Dr. Doineau, which the ALJ assigned significant weight, was itself based on a combination of self-report and observation.[13] (Tr. 282-87.) Thus, if self-report alone was a valid basis for disregarding a medical source statement at this phase of the disability analysis, the ALJ would have been required to apply this standard equally to all assessments on the record instead of applying this standard selectively to only Dr. Koomen's assessment.

Even if concerns about reliance on self-report were supported by the Social Security regulations or case law, there is not substantial evidence that Dr. Koomen simply mapped

---

[13] "[Plaintiff] was the sole informant and an average historian who did not appear to misrepresent his condition. *There was no documentation available for review to substantiate any allegations of disability. Hence, information contained in this report was either provided by the claimant or gleaned from observation and interview.*" (Tr. 282-83.) (emphasis added)

Plaintiff's self-reported responses directly onto the assessed limitations. Dr. Koomen did handwrite Plaintiff's self-reported responses on the assessment and noted that the assessment was "based on" an interview with Plaintiff. (Tr. 468-71.) But few of these hand-written responses align directly with the limitation options available on Dr. Koomen's assessment. For example, for the item "The ability to work in coordination with/or [in] proximity to others without being distracted by them," Plaintiff apparently responded "I get distracted." (Tr. 470.) Based on this response, Dr. Koomen selected a "marked" degree of limitation. (*Id.*) This is notably different from a situation where a claimant reports that "I get distracted and this prevents me from working," which a physician then blindly endorses.

However, the ALJ could reasonably reject Dr. Koomen's assessment, and not the others, if the ALJ had reason to doubt the credibility of the self-reported limitations utilized in Dr. Koomen's assessment. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 1990) (upholding ALJ's dismissal of medical opinions based solely on self-reports from a Plaintiff the ALJ found not credible); *see also Bass v. McMahon*, 499 F.3d 506, 510-11 (6th Cir. 2007). Thus, although Plaintiff properly argues that *credible* self-report is an acceptable foundation for a medical opinion (Doc. No. 22), a similar assessment based on *incredible* self-report could reasonably be given insignificant weight by an ALJ when the credibility determination is based on substantial evidence.[14]

---

[14] Plaintiff's reliance here on *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807 (N.D. Ohio 2009), to show the ALJ's error misses the mark. (Doc. No. 22.) *Winning* merely held that an ALJ's conclusory determination of incredibility, "*without any elaboration or detail*," was grounds for remand. 661 F. Supp. 2d at 821 (emphasis added). Here, the ALJ's determination of claimant's credibility was not conclusory, but instead based on substantial evidence in the record. Plaintiff does not object to the Report's finding that the ALJ properly determined Plaintiff's credibility. (Doc. No. 20.)

14

At the administrative hearing stage, the determination of credibility is reserved to the ALJ and is entitled to significant deference, though the determination "must be reasonable and supported by substantial evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *see also King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Here, the ALJ concluded that Plaintiff's statements regarding his limitations are "not entirely credible." (Tr. 22.) The ALJ provided the following reasons regarding the incredibility of Plaintiff's alleged limitations: "[D]epression and anxiety are responsive to medications. The claimant performs routine activities of daily living independently including the ability to ambulate effectively and make his own decisions." (Tr. 22.) Although the Court does not find substantial evidence to support the latter reason provided by the ALJ, the Court does find substantial evidence to support the former.

The particular daily activities cited by the ALJ, relating to ambulation and decision-making, do not equate with or contradict Plaintiff's reports and Dr. Koomen's assessment of marked difficulties with concentration and memory. *See Rogers*, 486 F.3d at 248 (rejecting an ALJ's equation of minimal daily functions with typical work-related activities). Moreover, a May 2007 Psychiatric Review by Dr. Regan, which was credited by the ALJ, indicated that Plaintiff's limitations regarding daily activities (mild) were less than his limitations regarding social functioning and concentration, persistence and pace (both moderate). (Tr. 406.) Thus, the record indicates that it was improper for the ALJ to equate Plaintiff's level of functioning in daily living with Plaintiff's other cognitive abilities.

However, substantial evidence does support the ALJ's conclusion that Plaintiff's psychological symptoms are responsive to medication. The record contains several indications that Plaintiff's anxiety and other symptoms were responsive to his medications (Tr. 120, 125, 131, 312-65, 436-47), including a statement by the Plaintiff during his assessment by Dr.

15

Doineau. (Tr. 283.) As noted above, the records from Centerstone, which provide the most extensive longitudinal record of Plaintiff's medication management, generally indicate Plaintiff's satisfaction with the regime of medications prescribed for his mental health issues. (Tr. 312-65, 430-47.) Together, these records comprise substantial evidence to support the ALJ's credibility findings. *See Nelson v. Comm'r Soc. Sec.*, No. 05-5879, 2006 U.S. App. LEXIS 22197, at *13-14 (6th Cir. Aug. 28, 2006) (upholding an ALJ's finding that a claimant's testimony regarding the severity of his symptoms was not entirely credible based, in part, on treatment being "generally successful in controlling [claimant's] symptoms").

In sum, there is substantial evidence to support the ALJ's conclusion that Plaintiff's reported mental limitations were incredible. Although medical opinions based on self-report should not be categorically dismissed, there is sufficient basis here to diminish the weight of Dr. Koomen's assessment because of its reliance on self-reported limitations deemed incredible by the ALJ.

*Inconsistency with the Record.* The final reason the ALJ provided for assigning insignificant weight to the September 2007 assessment of Dr. Koomen was that the limitations in this assessment were not "supported by or consistent with the evidence as a whole." (Tr. 21.) The ALJ's written opinion indicates that he relied primarily upon five sources of information in the record in arriving at this conclusion: notes from Plaintiff's neurologist, the narrative reports from Plaintiff's medication maintenance at Centerstone, and the three evaluations of Plaintiff's MRFC. After carefully reviewing this information, the Court finds that there is substantial evidence to conclude that Dr. Koomen's assessment was unsupported by and inconsistent with the record as a whole.

It is particularly useful to consider these sources of information in chronological order when assessing their consistency. Plaintiff saw a neurologist, Dr. Mary Ellen Clinton, four times from March to July 2005 after complaints of headaches and concern about a possible stroke. (Tr. 118-42.) Dr. Clinton noted that Plaintiff's symptoms, including nervousness, responded to medication across several visits (Tr. 125, 131), but worsened prior to their final visit in spite of continuing medication. (Tr. 125.) After these four visits, Dr. Clinton opined that if continued treatment with benzodiazepines (e.g., clonazepam and alprazolam) were required for patient's anxiety, Plaintiff should receive management of this medication through a mental health facility. (Tr. 120.) Dr. Clinton referred Plaintiff to Dr. Koomen at Centerstone for ongoing mental health care and medication maintenance, which he received from August 2005 to July 2007. As discussed at length above, the narrative records from Centerstone generally showed Plaintiff's satisfaction with the medication management he received. Taken together, these records of Plaintiff's treatment provide substantial evidence to support the ALJ's conclusion that Plaintiff's mental health symptoms were generally well-controlled by his medication.

The three separate evaluations by Drs. Doineau, Regan, and Koomen are the key sources directly assessing Plaintiff's work-related limitations. The ALJ gave "significant weight" to Dr. Doineau's limitation (Tr. 21) and "accepted as valid" the mental limitations assessed by Dr. Regan (Tr. 22), while the assessment by Dr. Koomen was "not given significant weight." (Tr. 21.) The following table summarizes that limitations assessed in each of these evaluations:

|  | **Dr. Doineau** *February 2007* | **Dr. Regan** *May 2007* | **Dr. Koomen** *September 2007* |
|---|---|---|---|
| **Understanding & Remembering** | Mild limitations | Mild to moderate limitations | No to moderate limitations |
| **Sustained Concentration & Persistence** | Mild limitations | Mild to moderate limitations | Mild to marked limitations |
| **Social Interaction** | No limitations | Mild to moderate limitations | Mild limitations |
| **Adaptability** | No limitations | Mild to moderate limitations | Mild to moderate limitations |

The critical change in limitations from the evaluations by Drs. Doineau and Regan to the evaluation by Dr. Koomen was the assessment of marked limitations in concentration and persistence. However, as noted above, the treatment records from Dr. Clinton and Centerstone provide substantial evidence of Plaintiff's satisfaction with treatment. Further, the ALJ noted that "nothing significant has been added to the record by way of new impairments or worsening existing ones to support a decline in functioning." (Tr. 22.) Indeed, the only indications of a decline in function over the relevant months are the Plaintiff's own self-reports, which the ALJ reasonably deemed "not entirely credible." (*Id.*) Thus, substantial evidence exists to support the ALJ's conclusion that Dr. Koomen's evaluation was not supported by or consistent with the record as a whole.

Finally, Plaintiff argues that even if the above reasons provided by the ALJ are credited, they "do[] not comply with *20 C.F.R. § 404.1527(d)(2)*."[15] (Doc. No. 22.) Specifically, Plaintiff suggests that the ALJ's failure to discuss each of the factors in § 1527(d)(2)-(6) in his reasons for assigning insignificant weight to Dr. Koomen's opinion constitutes a failure to follow the

---

[15] Plaintiff does not cite to the parallel requirements of § 416.927(d)(2), which pertain to Plaintiff's SSI hearing. However, the language in § 416.927(d)(2) is identical to § 404.1527(d)(2), and the arguments here apply equally to both Plaintiff's SSI and DIB claims.

relevant Social Security regulations. Citing *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742 (6th Cir. 2007), Plaintiff argues that this failure requires the Commissioner's decision to be remanded, even if substantial evidence supports the ALJ's conclusions. The Court finds this argument unpersuasive.

Plaintiff is correct that § 1527(d) provides Social Security claimants with important procedural benefits and falls into the category of regulations that may not be relaxed or modified at the whim of the agency. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). However, the Sixth Circuit has repeatedly held that the important procedural safeguard provided by § 1527(d) is the provision of good reasons for the weight provided by an opinion, not an exhaustive consideration of each factor in § 1527(d)(2)-(6). *See id.* at 544 ("[T]he regulation [§ 1527(d)(2)] also contains a clear procedural requirement: 'We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.'") (citing 20 C.F.R. § 404.1527(d)(2)); *see also Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 U.S. App. LEXIS 8872, at *20 (6th Cir. Apr. 28, 2010) ("The ALJ's decision as to how much weight to accord a medical opinion must be accompanied by "good reasons"), *Nelson v. Comm'r of Soc. Sec,*. No. 05-5879, 2006 U.S. App. LEXIS 22197, at *22-23 (6th Cir. Aug. 28, 2006) ("Recent opinions from this court reflect that the ALJ must provide good reasons for the weight given a treating source's opinion."), Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 ("[T]he determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"). In *Bowen*, the ALJ failed to provide *any* reasons for rejecting the opinion of a treating psychologist.

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007). This is clearly distinguishable from the current situation, where the ALJ has provided three good reasons for the weight assigned to Dr. Koomen's opinion, each based on factors in § 1527(d)(2)-(6) and supported by substantial evidence.

## IV. CONCLUSION

The Court does not find merit in the Plaintiff's objection because there is substantial evidence to support the ALJ's decision to afford Dr. Koomen's assessment insignificant weight. The ALJ provided sufficient good reasons, in compliance with § 404.1527(d)(2) and § 416.927(d)(2), for assigning diminished weight to the evaluation of a treating physician and significant weight to the assessments of two consulting examiners. Therefore, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the magistrate judge's Report in its entirety.

This Order terminates this Court's jurisdiction over the above-styled action, and the case is **DISMISSED**.

It is so ORDERED.

Entered this the 3rd day of August, 2010.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT